IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 114-060 |
| | ) | |
| SARAWIN NAT INTAKANOK | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Defendant, charged with attempted online enticement of a minor under 18 U.S.C. § 2422(b), moves to dismiss the indictment, suppress statements he made following his arrest, and suppress all evidence obtained from his smartphone, laptop, and email account. (Doc. nos. 23, 24.) Having considered all arguments and testimony, the Court **REPORTS** and **RECOMMENDS** that Defendant's motions be **DENIED**.

I.  BACKGROUND

At the evidentiary hearing on July 25, 2014, the sole witness to testify was Officer Mark Dobbins, a member of a task force comprised of officers from the Richmond County Sheriff's Office and the Federal Bureau of Investigation. The task force initiated the investigation that led to Defendant's arrest by posting an advertisement in the "casual encounters" section of Craigslist. Court's recording system, *For the Record* ("FTR") 11:05.15-11:07.48. Using a pseudonym, Officer Dobbins posted as a father with a twelve-year-old daughter, and indicated that the two of them would be in Atlanta for a weekend and were seeking entertainment. FTR 11:09.35-.50; 11:12.40-.43;

Government's Exhibit 1. Officer Dobbins testified that the casual encounters section is frequently used by people attempting to solicit children, and in this case his post garnered more than 200 responses seeking a sexual encounter with the fictitious father and his daughter. FTR 11:07.48-11:09.31.

One such respondent, purportedly Defendant, used the screen name "Hot Guy For Fun," and expressed interest in an encounter with the father and his daughter. FTR 11:10.07-.16; 11:12.46-.48. Although emails sent through Craigslist do not normally show the sender's email address, several messages from Hot Guy For Fun indicated the sender's email address as SecretWhisper1@gmail.com. FTR 11:11.57-11:13.08; Government's Exhibit 2, pp. 2, 4, 5. Hot Guy For Fun inquired as to the fictitious youth's physique and sexual experience, suggested and provided access to websites with child pornography, asked Officer Dobbins to verify he was not a police officer, and arranged to meet the fictitious father and daughter in Augusta, Georgia on the night of April 4, 2014 for a sexual encounter. FTR 11:13.58-11:15.57, Government's Exhibit 2, pp. 8-10.

On the night of April 4, Hot Guy For Fun sent a Craigslist message to Officer Dobbins confirming his departure from Atlanta followed by messages documenting his progress to Augusta. FTR 11:15.55-11:16.57; Government's Exhibit 2, pp. 11-21. During this time, Officer Dobbins asked Hot Guy For Fun if he had condoms for the sexual encounter, to which Hot Guy For Fun responded he had. FTR 11:18.30-.50; Government's Exhibit 2, pp. 12-14. Officer Dobbins suggested they meet at a Hooters restaurant in Augusta, where posted agents identified Defendant and observed him taking

2

a picture of a theater in the same shopping center as the Hooters. FTR 11:22.36-11:24.18. Just after midnight, Hot Guy For Fun emailed a photograph of this theater to Officer Dobbins to prove he was in the area, and Officer Dobbins provided Hot Guy For Fun with an address for a townhouse where the sexual encounter would supposedly take place. Government's Exhibit 2, pp. 19-21.

At approximately 1:00 a.m. on April 5, 2014, Defendant arrived at the townhouse with a box of condoms, a laptop computer, and a smartphone, and was placed under arrest. FTR 11:18.28-11:21.42; 11:22.32-.34. Officer Dobbins testified that the laptop was capable of taking photographs, that both the laptop and smartphone were the sort of devices used to communicate by email through Craigslist, and that Defendant would have needed such a device to send and receive such communications while travelling from Atlanta to Augusta. FTR 11:17.07-11:20.24. Because the laptop was equipped with a camera and wireless internet card, it was capable of taking photographs and wirelessly transmitting messages and photographs through email and Craigslist. Id.

Following Defendant's arrest, in the time frame of 1:00 to 1:45 a.m., Officer Dobbins led Defendant into the townhouse for a recorded interview. FTR 11:25.00-.36; 11:31.13-15. Officer Dobbins presented Defendant with a waiver form describing his Miranda rights and read the form aloud as Defendant followed along. FTR 11:25.41-11:26.55. Defendant initialed each individual waiver provision and both he and Officer Dobbins signed the form at the bottom. FTR 11:27.38-.56; Government's Exhibit 3.

Officer Dobbins began the interview by engaging in an open dialogue with Defendant in an attempt to build rapport and provide assurance that he felt no malice

toward Defendant. FTR 11:29.09-.43; 11:52.39-11:53.24. As part of this process, Officer Dobbins explained how Defendant's case would proceed and explained that he would ultimately determine whether state or federal charges were brought against Defendant. FTR 11:29.09-.43; 11:53.47-.53. Officer Dobbins did not make any promises to Defendant in exchange for his cooperation in the interview, nor did Officer Dobbins provide any indication that Defendant's participation in the interview would influence the decision whether to bring federal or state charges. FTR 12:07.59-12:08.30.

Following Officer Dobbins' rapport building effort, Defendant began to open up, and Officer Dobbins testified that Defendant did not appear to do so merely because he sought to curry favor in an effort to avoid federal charges. FTR 11:54.07-.11; 12:09.41-.43. Although Defendant initially denied involvement in the Craigslist communications, Officer Dobbins testified that once Defendant opened up, he became "inquisitive," "direct," and eager to "get to the point." FTR 11:26.56-11:27.19; 11:37.30-.39. Defendant was calm and cooperative throughout the interview, and Officer Dobbins testified that Defendant was extremely intelligent, articulate, and aware. FTR 11:26.56-11:31.09. The interview was conversational in tone, never became heated, and Defendant actively participated by asking Officer Dobbins questions about the proceedings to come. FTR 11:28.49-11:29.03. The interrogation occurred quickly after Defendant's arrest while he was in handcuffs, lasted two hours, and took place in the comfort of the dining room of the townhome. Id.

After Defendant's arrest, Officer Dobbins submitted two applications for search warrants to Richmond County Superior Court Judge Daniel Craig, one seeking authority

to search the laptop and smartphone found in Defendant's car the night of his arrest, and the other to search the email account SecretWhisper1@gmail.com. FTR 11:31.41-11:32.07; 11:40.42-11:42.05; Government's Exhibits 5, 6, 7. Officer Dobbins summarized the investigation and arrest in the affidavits accompanying the applications, and sought permission to seize and search the email account, laptop, and smartphone. FTR 11:58.12-.18; 12:00.28-.34; Government's Exhibits 5, 6, 7. The applications sought authority to seize any evidence associated with violations of O.C.G.A. § 16-16-4, Criminal Attempted Child Molestation, as Defendant had not yet been federally indicted at that time, and listed specific types of related information sought as to the email account, smartphone, and laptop. Government's Exhibits 5, 6, 7. Officer Dobbins testified that the information sought, especially images and IP addresses, are vital in an investigation such as this one to validate the identity of the account owner and user. FTR 12:13.10-12:17.29; 12:20.22-12:21.25.

Several days later, after Defendant was released on bond, he appeared at the Richmond County Sheriff's Office to retrieve his car and personal items. FTR 11:32.30-11:33.06. Officer Dobbins did not anticipate meeting with Defendant, but when Defendant asked Officer Dobbins if they could talk, Officer Dobbins accommodated him by speaking with him in a nearby conference room. FTR 11:33.12-.55; 11:37.42-11:38.02. Officer Dobbins reminded Defendant that he was under no obligation to speak about his case with law enforcement, but Defendant nevertheless engaged Officer Dobbins in a conversation about his case, during which he was remorseful, asked why a

5

federal charge had been brought, and expressed his desire to "beat the charge." FTR 11:34.14-11:37.19. The conversation never became heated, and Defendant's faculties did not appear to Officer Dobbins to be impaired in any way. FTR 11:40.04-.20.

II. DISCUSSION

    A. **The Indictment Should Not Be Dismissed Because It Sufficiently Alleges a Violation of 18 U.S.C. § 2422(b).**

Defendant argues that the indictment should be dismissed because the Craigslist email thread does not prove that he committed a violation of § 2422(b). FTR 10:35.17-.45. As defense counsel conceded, the argument runs headlong into the longstanding rule disallowing criminal summary judgment proceedings. FTR 10:35.45-10:37.55. "It is not for the courts to filter which criminal cases may reach the trial stage by reviewing the proffered evidence in advance." United States v. Salman, 378 F.3d 1266, 1268-69 (11th Cir. 2004). The indictment is not subject to dismissal because it complies with Fed. R. Crim. P. 7(c)(1) by setting forth "a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ."

Defendant also argues that no violation of § 2422(b) occurs when a defendant negotiates with the purported father of a fictitious minor in an attempt to arrange sexual activity with the minor. The argument fails procedurally because it also seeks summary judgment by relying on the evidence instead of the indictment's allegations. Furthermore, the Eleventh Circuit rejected this same argument ten years ago and held that a defendant acts with the intent to induce a minor to engage in criminal sexual activity, in violation of § 2242(b), by negotiating with the purported father of a fictitious minor in an

attempt to stimulate or cause the minor to engage in sexual activity. United States v. Murrell, 368 F.3d 1283, 1287 (11th Cir. 2004). For all of these reasons, Defendant's motion to dismiss the indictment should be **DENIED**. (Doc. no. 23.)

    B.    **Statements to Officer Dobbins Should Not Be Suppressed Because Defendant Knowingly Waived his Rights and Spoke Voluntarily.**

Although Defendant's suppression motion broadly seeks suppression of any statements made by Defendant to law enforcement, defense counsel clarified at the hearing that Defendant is not moving to suppress a lengthy voice mail message Defendant left for Officer Dobbins after their last meeting. Defendant argues that the Court should suppress as involuntary the statements he made to Officer Dobbins on the night of his arrest and seven days later when he returned to Officer Dobbin's office to retrieve his car and personal items. FTR 10:39.40-.44. See generally 18 U.S.C. § 3501; Jackson v. Denno, 378 U.S. 368 (1964). The Court disagrees for the reasons stated below.

The Fifth Amendment's privilege against self-incrimination applies during a custodial interrogation, but a suspect may waive his right to remain silent provided he does so "voluntarily, knowingly and intelligently." Miranda v. Arizona, 384 U.S. 436, 444, 460–61 (1966). The government has the burden of showing the knowing and intelligent nature of a waiver. Id. at 475. The analysis asks two questions. First, was the waiver made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it? United States v. Ransfer, 749 F.3d 914, 935 (11th Cir. 2014). Second, was the waiver voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception?

7

Id. Only if the totality of the circumstances proves both the requisite level of comprehension and an uncoerced choice may a court properly conclude that Miranda rights have been waived. Id.

As to the first question, the totality of the circumstances proves that Defendant fully understood his right to remain silent and the consequences of his decision to waive that right. It is undisputed that on the night of Defendant's arrest Officer Dobbins began his discussion by presenting Defendant with a waiver form describing his Miranda rights and reading the form aloud as Defendant followed along. FTR 11:25.41-11:26.55. Defendant initialed each individual waiver provision and both he and Officer Dobbins signed the form at the bottom. FTR 11:27.38-.56; Government's Exhibit 3. There is also no question concerning Defendant's mental capacity to understand his rights. Defense counsel readily conceded at the hearing that Defendant is highly intelligent and articulate. FTR 11:26.56-11:31.09.

While Officer Dobbins did not remind Defendant of his Miranda rights during their subsequent meeting at Officer Dobbin's office, there was no requirement to do so. Defendant was not in custody at the time and he voluntarily participated in the meeting. Indeed, Defendant asked Officer Dobbins for the unscheduled, impromptu meeting and Officer Dobbins accommodated his request. See, e.g., United States v. Phillips, 812 F.2d 1355, 1360 (11th Cir. 1987) (in order to be in "custody" for purposes of Miranda, a reasonable person in the suspect's position must feel a restraint upon his freedom of movement to such an extent he would not feel free to leave).

As to the second question, the Court must ultimately determine "whether a statement was made freely or whether the defendant's 'will has been overborne and his capacity for self-determination has been critically impaired.'" Devier v. Zant, 3 F.3d 1445, 1455–56 (11th Cir. 1993) (quoting Culombe v. Connecticut, 367 U.S. 568, 602 (1961)). When deciding whether a confession was voluntary, courts consider the totality of the circumstances including (1) details of the interrogation; (2) the defendant's education, intelligence, and other characteristics; (3) length of detention; (4) questioning that is repetitious or prolonged; (5) physical punishment such as the deprivation of food or sleep; and (6) any promises to induce a confession. Ransfer, 749 F.3d at 935; see also Colorado v. Connelly, 479 U.S. 157, 163 n. 1 (1986); United States v. Bernal–Benitez, 594 F.3d 1303, 1319 (11th Cir. 2010); Waldrop v. Jones, 77 F.3d 1308, 1316 (11th Cir.1996); United States v. Mendoza–Cecelia, 963 F.2d 1467, 1475 (11th Cir. 1992).

Here, considering the totality of the circumstances, the Court finds that Defendant's statements to Officer Dobbins on the night of his arrest were voluntary and the product of a free and deliberate choice, made in the absence of intimidation, coercion, and deception. At the time of Defendant's initial interview, he was not expressly or implicitly threatened by Officer Dobbins, nor was he subjected to an exhaustively long interrogation, physical force, or abusive language. The interrogation lasted commenced quickly after his arrest, occurred in the comfort of the townhouse dining room, and lasted approximately two hours.

Though Defendant was handcuffed and must have been shaken by his arrest, as any defendant would, there is no evidence that he believed he was in physical danger or

had no choice but to cooperate with the agents. Even if Defendant had harbored such a subjective belief, his state of mind is immaterial without some indication of police misconduct, and the record contains no such indication here. Connelly, 479 U.S. at 167 ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'").

At no time did Officer Dobbins threaten Defendant or promise him any benefit in exchange for his cooperation. Defendant argues there is coercion in Officer Dobbins' explanation to Defendant that he was the law enforcement officer with the authority to decide whether Defendant would be prosecuted at the state or federal level. FTR 12:36-12:41. It is undisputed that this statement by Officer Dobbins was true, as he was in fact the officer with the authority to make this decision. Defense counsel does not allege that Officer Dobbins overtly threatened federal prosecution if Defendant did not cooperate in the interview, but instead argues that the mere mention of Officer Dobbins' authority was sufficient to constitute a subtle, implied coercion because of Defendant's extraordinary intelligence. Id.

The context of Officer Dobbins' reference to his decision making authority shows convincingly his intent to merely explain the criminal process, not to imply any promise of favorable treatment or threats of unfavorable treatment. Indeed, Officer Dobbins testified that this statement was only a small part of his general explanation of the investigation, subsequent proceedings, and his role therein. FTR 11:53-11:54. Defense counsel does not allege—nor did Officer Dobbins' testimony indicate—that he even hinted Defendant would receive preferential treatment if he cooperated. FTR 12:07-

12:10. Instead, Officer Dobbins merely informed Defendant who he was and what role he would play in the subsequent criminal proceedings.

The statement could not be reasonably construed as an implied threat or a promise of favorable treatment in exchange for a confession and, even if it were, a minor inducement of that sort is not likely to overpower a defendant's free will. Even a direct, unequivocal statement by a law enforcement agent "that the accused's cooperation would be passed on to judicial [or prosecuting] authorities and would probably be helpful to him is not a sufficient inducement so as to render a subsequent incriminating statement involuntary." United States v. Davidson, 768 F.2d 1266, 1271 (11th Cir. 1985). Similarly stated, "isolated incidents of police deception and discussions of realistic penalties for cooperative and non-cooperative defendants are normally insufficient to preclude free choice." Mendoza-Cecilia, 963 F.2d at 1475.

The totality of the circumstances also proves that Defendant's statements to Officer Dobbins seven days after his arrest were voluntary and the product of a free and deliberate choice, absent of intimidation, coercion, or deception. Having been released from custody, Defendant arrived at Officer Dobbins' office on his own volition to pick up his car and personal belongings. It is undisputed that Defendant asked Officer Dobbins if they could discuss his case. Officer Dobbins agreed to do so and reminded Defendant that he had no obligation to speak. There is no evidence of any improper police coercion or other police misconduct. The meeting lasted only thirty minutes and consisted primarily of Defendant expressing a desire to fight the charge and avoid a conviction that would require him to register as a sex offender.

Considering the totality of the circumstances as established by the evidence adduced at the evidentiary hearing, the Court finds that the government has demonstrated by a preponderance of the evidence that Defendant's statements on both occasions were entirely voluntary. Lego v. Twomey, 404 U.S. 477, 489 (1972) (applying preponderance of the evidence test in voluntariness inquiries); Jackson, 378 U.S. at 391. There is no evidence in this record of any threats, use of force, improper inducements, deception, or any other conduct by law enforcement agents designed to coerce Defendant into making a statement on either occasion. Accordingly, Defendant's motion to exclude his statements as involuntary should be **DENIED**.

C. **Evidence Seized from Defendant's Smartphone, Laptop, and Email Account Should Not Be Suppressed Because the Search Warrants Were Supported by Probable Cause, Sufficiently Particularized, and Procured in Good Faith.**

At the hearing, Defendant abandoned the argument raised in his brief that the search warrants at issue were not supported by probable cause. FTR 10:56-10:58. The argument was meritless because law enforcement applied for both warrants after Defendant's arrest and based them on the Craigslist communications, Defendant's travel from Atlanta to Augusta, and his appearance at the townhome in question. Defendant continues to argue that the warrants were overly broad because (1) the supporting affidavits failed to establish a nexus between the crime alleged and Defendant's e-mail account, smartphone, and laptop computer; and (2) the warrants granted unfettered access to search all three items without restricting searches by date range, search terms, and/or requiring the use of a third party "clean team" to winnow out irrelevant information. FTR 11:00-11:01; 11:56-12:00. Neither argument is persuasive.

The Fourth Amendment's particularity "requirement is aimed at preventing 'general, exploratory rummaging in a person's belongings.'" United States v. Wuagneux, 683 F.2d 1343, 1348 (11th Cir.1982) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971)). A warrant that fails sufficiently to particularize the place to be searched or the things to be seized is unconstitutionally overbroad and the resulting general search is unconstitutional. Stanford v. Texas, 379 U.S. 476, 485–86 (1965). A description is sufficiently particular when it enables the searcher reasonably to ascertain and identify the things to be seized. United States v. Santarelli, 778 F.2d 609, 614 (11th Cir. 1985).

Defendant's first argument fails because there was a direct link between the criminal activities alleged by the government and all three items, as detailed in the search warrant applications and Officer Dobbins' testimony at the suppression hearing. Probable cause existed at the time the warrants issued to believe that (1) Defendant utilized the "SecretWhisper1" email account to communicate with Officer Dobbins regarding sex with a minor, as evidenced by multiple references to this email account in the Craigslist messages that Officer Dobbins received from Hot Guy For Fun; and (2) Defendant communicated with Officer Dobbins during his trip from Atlanta to Augusta by utilizing the smartphone and/or laptop, both of which Defendant possessed on the night of his arrest in Augusta and were capable of taking photographs and sending information wirelessly over the internet through the email account and Craigslist.

The warrants clearly provided a nexus between the information to be searched and the crime being investigated, for which Defendant had already been arrested, and the

13

warrants were not a mere pretense to search for additional unrelated wrongdoing. See Government's Exhibits 5, 6, 7. Law enforcement officers executing the warrant were not unguided and free to rummage through all of Defendant's property. Instead, the warrant narrowed law enforcement's search to three, specific items with a direct connection to the alleged crime.

As to Defendant's second argument, the warrants were properly limited to searching the email account, laptop, and smartphone for specific categories of information that bear an obvious relationship to the crime alleged. Indeed, the warrants primarily authorized the government to search for and seize information relating to the crime of attempted child molestation and information concerning ownership and user identification for the email account, smartphone, and laptop. Federal courts have consistently rejected particularity challenges to warrants authorizing the seizure and search of entire personal or business computers. See United States v. Richards, 659 F.3d 527, 539 (6th Cir. 2011) (collecting cases). "In other words, so long as the computer search is limited to a search for evidence explicitly authorized in the warrant, it is reasonable for the executing officers to open the various types of files located in the computer's hard drive in order to determine whether they contain such evidence." Id. at 540 (quotation marks and citations omitted).

It is well-established in the Eleventh Circuit that warrants of this nature need not specify search protocols or methodologies in order to pass constitutional muster. See, e.g., United States v. Khanani, 502 F.3d 1281, 1290 (11th Cir. 2007) (rejecting defendants' argument that "the lack of a written 'search protocol' required the district

court to suppress all evidence agents seized as a result of the search of the defendants' computers"); United States v. Bradley, 644 F.3d 1213, 1258 (11th Cir. 2011) (rejecting outright "claim that the searches were unconstitutional because the agents failed to obtain pre-approval from the district court of a search protocol before conducting the searches"); United States v. Brooks, 3:13-CR-58-J-34JRK, 2014 WL 292194, at *12 (M.D. Fla. Jan. 27, 2014) (same). Here, having established a nexus between the crime alleged and the email account, smartphone, and laptop, a thorough search of these items was the only practical way to determine whether they contained evidence of the crime alleged or any other information responsive to the specific categories of information set forth in the warrants.

Even if Defendant could show that the warrants lack probable cause or are overly broad, which they are not, the Leon good faith exception applies because law enforcement's execution of the warrants was objectively reasonable. See United States v. Leon, 468 U.S. 897 (1984). "The Supreme Court's decision in Leon stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." United States v. Robinson, 336 F.3d 1293, 1295-96 (11th Cir. 2003) (quotation and citation omitted). Pursuant to Leon, suppression is necessary "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Id.

Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate judge "normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." Leon, 468 U.S. at 922 (quotation and citation omitted). Nevertheless, "it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." Id. at 922–23. The Leon good faith exception thus does not apply when: (1) the magistrate judge was misled by information the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) the issuing magistrate judge wholly abandoned his judicial role; (3) the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. Robinson, 336 F.3d at 1295-96.

Here, considering the totality of the circumstances, the Court finds that the Leon good faith exception does apply. Defendant does not allege any material misrepresentations or omissions by law enforcement in obtaining the warrants, and the information set forth in the warrant applications is entirely consistent with the sworn testimony of Officer Dobbins. The issuing judge did not abandon his judicial role. The warrant applications provided a wealth of information that established probable cause. And the warrant is not so facially deficient in any respect, and especially with regard to the issues of probable cause and particularity, that the executing officers could not

reasonably presume it to be valid. Accordingly, Defendant's motion to exclude evidence seized from his smartphone, laptop, and email account should be **DENIED**.

III. **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion to dismiss the indictment and motion to suppress evidence be **DENIED**. (Doc. nos. 23, 24.)

SO REPORTED and RECOMMENDED this 19th day of August, 2014, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA