IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| SARAWIN NAT INTAKANOK | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 116-038 |
| | ) | (Formerly CR 114-060) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

**O R D E R**
_____

Before the Court is Petitioner's second motion to amend his § 2255 motion, and motion for an evidentiary hearing. (Doc. nos. 22-1, 22-2.) The Court **GRANTS IN PART** and **DENIES IN PART** Petitioner's motion to amend (doc. no. 22-1), and **GRANTS** Petitioner's motion for a hearing (doc. no. 22-2). The evidentiary hearing will proceed as to Petitioner's Grounds Six and Seven as supplemented.

**I.   BACKGROUND**

   **A.   Indictment and Agreement to Plead Guilty**

On May 7, 2014, the grand jury in the Southern District of Georgia charged Petitioner with one count of attempted online enticement of a minor, in violation of 18 U.S.C. § 2422(b). United States v. Intakanok, CR 114-060, doc. no. 1 (S.D. Ga. May 7, 2014) (hereinafter "CR 114-060"). The indictment alleged Petitioner knowingly attempted to persuade, induce, entice, and coerce an individual he believed to be a thirteen-year-old girl to engage in sexual activity for which he could have been charged with the Georgia law crimes

of child molestation and statutory rape. (Id.) Petitioner retained attorneys Adam M. Hames, Bruce S. Harvey, and Stuart M. Mones to represent him. (Id., doc. nos. 6, 13, 17.)

After Petitioner's motions to dismiss and to suppress were denied, Petitioner pleaded guilty to attempted online enticement of a minor on March 20, 2015. (Id., doc. nos. 77, 78.) In exchange for his guilty plea, the government and Petitioner agreed the appropriate sentencing range was 120 to 140 months imprisonment. (Id., doc. no. 78, pp. 2-4.) The government also agreed to recommend a two-point acceptance of responsibility reduction. (Id.) By operation of the plea agreement, Petitioner admitted he traveled from Atlanta to Augusta in order to knowingly attempt to persuade, induce, entice, and coerce an individual believed to be a thirteen year-old-girl to engage in sexual activity for which he could have been charged with statutory rape and child molestation under Georgia law. (Id. at 2.) Petitioner waived the right to a direct appeal of his conviction unless his sentence exceeded the statutory maximum, the sentencing court upwardly departed from the advisory Guidelines range, or the government appealed the sentence. (Id. at 5.) Petitioner also waived the preparation of a Presentence Investigation Report ("PSI"). (Id. at 3.)

### B.   Change of Plea Hearing and Sentencing

Petitioner proceeded to a change of plea hearing before Chief United States District Judge J. Randal Hall on March 20, 2015. Chief Judge Hall established Petitioner's competence to enter a guilty plea. (Id., doc. no. 86.) Chief Judge Hall explained to Petitioner he could be sentenced between ten years and life imprisonment, and Petitioner affirmed he understood. (Id. at 17.) Chief Judge Hall also reviewed the rights Petitioner would forfeit by entering a guilty plea, and Petitioner affirmed he understood. (Id. at 9-11.)

The Court heard the factual basis for Petitioner's guilty plea from FBI Special Agent Justin Garrick. (Id. at 21.) SA Garrick testified Petitioner responded to internet advertisements posted on Craigslist by Investigator Mark Dobbins, seeking to meet with a fictitious father and thirteen year-old daughter to engage in sexual activity. (Id. at 22-23.) Petitioner traveled from Atlanta to Augusta and sought one-on-one time with the fictitious thirteen year-old girl. (Id. at 25-26.) When asked whether he disagreed with the factual basis presented by SA Garrick, Petitioner stated "No, sir." (Id. at 27.) Finding this sufficient for acceptance of Petitioner's guilty plea, Chief Judge Hall allowed the plea to be entered. (Id. at 28.)

Petitioner proceeded to sentencing on March 24, 2015. Chief Judge Hall reviewed the charges and noted the statutory penalty for a violation of § 2422(b) was ten years to life imprisonment, but accepted the plea agreement's sentencing range of 120 to 140 months incarceration. (Id., doc. no. 87, pp. 3-4.) Chief Judge Hall then heard statements in mitigation from Petitioner's counsel, Petitioner, and Petitioner's brother.

Petitioner's counsel emphasized Petitioner's strong family support, including their presence in the courtroom, and focused on presenting Petitioner as a hard-working and productive member of the community. Counsel noted Petitioner financially supported his mother, was committed to meditation and Buddhism, and had a positive influence on his fellow inmates. (Id. at 6.) Counsel described Petitioner's addiction to MDMA, cocaine, and methamphetamine, and argued this impaired his judgment and caused him to act impulsively. (Id.) Counsel argued for a sentence of 120 months, the statutory minimum, and requested treatment for Petitioner's drug addiction. (Id. at 7, 21-22.)

3

Petitioner's brother testified Petitioner's addiction to MDMA, methamphetamine, and cocaine affected Petitioner's behavior; Petitioner did not eat, was more prone to outbursts, and was "not himself." (Id. at 8-9.) Petitioner provided his own mitigating statements, apologizing profusely for the impact of his conduct on his family and friends. (Id. at 11.) Petitioner testified to his drug use and its escalation, claiming it severely impaired his perception and judgment. (Id.)

Responding to these statements in mitigation, Chief Judge Hall emphasized Petitioner's case was not "more about drugs than about enticement of a minor . . . [and while] meth may have been a contributing factor . . . the reason we're here today is because [Petitioner] attempted to entice a minor to have sex." (Id. at 25.) Chief Judge Hall imposed a sentence of imprisonment of 130 months, twenty-five years supervised release, and a $100 special assessment. (CR 114-060, doc. no. 80.) Judgment was entered on March 25, 2015. (Id., doc. no. 81.) Petitioner did not file a direct appeal.

### C. § 2255 Proceedings

Petitioner signed his § 2255 motion on March 22, 2016, and the Clerk's office filed the motion on March 28, 2016. (Doc. no. 1, pp. 1, 13.) Petitioner raised seven grounds for relief:

(1) Petitioner's confession was involuntary and was coerced through deception.

(2) The government impermissibly charged both state and federal offenses before the grand jury and fraudulently obtained an indictment that divested the lower court of jurisdiction to take a guilty plea or impose a sentence, and counsel was ineffective for failing to object.

4

(3) Counsel was ineffective when they prepared for trial because they refused to use a paper proffered by Petitioner entitled "Enticers and Travelers, Law and Strategy in 'Child Sex' Cases" from a "Winning Strategies Seminar."

(4) Petitioner's plea was not knowingly and voluntarily entered because the government committed fraud upon the Court when it entered into a binding plea agreement with Petitioner that included a stipulated sentencing range, when the U.S. Bureau of Prisons could use the Adam Walsh Act to civilly commit Petitioner for a term up to life, rendering the District Court's sentence meaningless.

(5) Counsel was ineffective at sentencing by failing to object to a sentence computation and judgment that included state charges of statutory rape and child molestation, ensuring Petitioner's sentence could be escalated to a possible life sentence by the implementation of civil commitment under the Adam Walsh Act.

(6) Counsel was ineffective for failing to file a notice of appeal in a timely manner after Petitioner explicitly instructed counsel to file an appeal at sentencing. Counsel abandoned Petitioner and allowed the time for an appeal to expire.

(7) Counsel was ineffective for failing to argue a circuit split before the United States Supreme Court on the Adult Intermediary Function.

After Respondent filed its response on June 13, 2016, Petitioner filed his first motion to amend on July 5, 2016, seeking to add support for Grounds Six and Seven. Petitioner sought to supplement his Ground Seven claim by providing additional argument counsel was ineffective because they knew Petitioner's conduct did not meet the elements of 18 U.S.C. § 2422(b), and did not inform Petitioner nor raise this claim at trial. (See doc. no. 5, pp. 7-8.) Petitioner also sought to add an entirely new claim in Ground Eight:

(8) In light of the Supreme Court's decision in Johnson v. United States, 135 S.Ct. 2551 (2015), 18 U.S.C. § 2422(b) is unconstitutionally void for vagueness.

(Doc. no. 5, pp. 8-9.)

5

Respondent did not oppose Petitioner's first motion to amend, but argued Petitioner's new claim in Ground Eight was entirely meritless. (Doc. no. 9, p. 1.) On August 19, 2016, this Court granted Petitioner's first motion to amend (doc. no. 10), and scheduled an evidentiary hearing on Petitioner's Ground Six claim. (Doc. no. 12.) Petitioner then retained attorney Marcia G. Shein, and filed a second motion to amend and a motion for an evidentiary hearing. (Doc. nos. 22-1, 22-2.)

In Petitioner's second motion to amend, he seeks to supplement his claims in Grounds Four, Five, Six, Seven, and Eight with additional factual and legal support. (Doc. no. 22-1.) Petitioner also raises additional claims, numbered for ease of reference as proposed Grounds Nine and Ten, as follows:

(9) Counsel was ineffective at sentencing by only calling one witness, and failing to seek psychological or addiction expert testimony that could have explained how Petitioner's drug use affected his decision-making.

(10) Counsel was ineffective for advising Petitioner to waive the preparation of a PSI prior to sentencing, agreeing to a stipulated sentencing range of 120-140 months, and for failing to investigate and advise Petitioner of his likely sentencing exposure. Petitioner's likely sentencing range would have been between 121 and 151 months incarceration.

(Id. at 6-9, 16-24.) Respondent argues these additional claims are untimely, do not relate back to Petitioner's original or amended motions, and are meritless. (Doc. no. 26, p. 3.)

## II. DISCUSSION

### A. Federal Rule of Civil Procedure 15

The Federal Rules of Civil Procedure are applicable to proceedings for habeas corpus "to the extent that the practice in those proceedings: (A) is not specified in a federal statute, the Rules Governing 2254 Cases, or the Rules Governing Section 2255 Cases; and (B) has

6

previously conformed to the practice in civil actions." Fed. R. Civ. P. 81(a)(4).  Similarly, Rule 12 of the Rules Governing § 2255 Proceedings provides that "[t]he Federal Rules of Civil Procedure . . . , to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."  Furthermore, both the Supreme Court and the Eleventh Circuit have held Federal Rule of Civil Procedure 15 applicable to requests to amend § 2255 motions.  See Mayle v. Felix, 545 U.S. 644, 654 (2005) (citing 28 U.S.C. § 2242); Pruitt v. United States, 274 F.3d 1315, 1317-19 (11th Cir. 2001).  Thus, the Court will apply a traditional Rule 15 analysis to Petitioner's motion to amend.

Federal Rule of Civil Procedure 15(a)(1) provides that:

A party may amend its pleading once as a matter of course within:  (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Here, Petitioner cannot amend as a matter of course under Fed. R. Civ. P. 15(a)(1), and can only amend with leave of court.  As a general rule, leave to amend under Fed. R. Civ. P. 15(a) is given freely.  Foman v. Davis, 371 U.S. 178, 182 (1962); Wedemeyer v. Pneudraulics, Inc., 510 F. App'x 875, 878 (11th Cir. 2013).  That said, leave to amend is not guaranteed, and a trial court may deny such leave "in the exercise of its inherent power to manage the conduct of litigation before it."  Reese v. Herbert, 527 F.3d 1253, 1263 (11th Cir. 2008).  "In making this determination, a court should consider whether there has been undue delay in filing, bad faith or dilatory motives, prejudice to the opposing parties, and the futility

7

of the amendment."  Saewitz v. Lexington Ins. Co., 133 F. App'x 695, 699 (11th Cir. 2005) (quoting Foman, 371 U.S. at 182).

A motion to amend that seeks to add claims is properly denied as futile when the claims are without merit or cannot form the basis for cognizable relief.  See Coventry First, LLC v. McCarty, 605 F.3d 865, 870 (11th Cir. 2010) (ruling that futility includes proposed amendments that fail as a matter of law); Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007).  In accordance with this principle, where the proposed amendment would be barred by the applicable statute of limitations, a district court may properly deny leave to amend as futile.  See Moore v. Baker, 989 F.2d 1129, 1131 (11th Cir. 1993); see also United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000) ("Where the statute of limitations bars a cause of action, amendment may be futile and therefore can be denied.").

Under Federal Rule of Civil Procedure 15(c), an amended claim will relate back to the date of the original pleading if it arises "out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."  Rule 15(c) is narrow; it does not contemplate the addition of "an entirely new claim based on a different set of facts."  Farris v. United States, 333 F.3d 1211, 1215 (11th Cir. 2003) (*per curiam*) (citing Pruitt, 274 F.3d at 1318).  Moreover, in the context of a habeas corpus action, the fact that claims arise out of the same "trial, conviction, or sentence" is not sufficient for relation back.  Mayle, 545 U.S. at 664; Farris, 333 F.3d at 1215 ("[T]o relate back, an untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial or sentencing proceeding." (citing Davenport v. United States, 217 F.3d 1341, 1344 (11th Cir. 2000))).  Rather, it is imperative that the claims be "tied to a common core of operative

8

facts." Mayle, 545 U.S. at 664; see also Pruitt, 274 F.3d at 1319 ("[T]he key factor is whether the amended claims arise from the same underlying facts as the original claims").

As the Eleventh Circuit has explained:

> The key consideration is that the amended claim arises from the same conduct and occurrences upon which the original claim was based. This may be the case even if one or both claims do not explicitly state supporting facts. When the nature of the amended claim supports specifically the original claim, the facts there alleged implicate the original claim, even if the original claim contained insufficient facts to support it. One purpose of an amended claim is to fill in facts missing from the original claim.

Dean v. United States, 278 F.3d 1218, 1222 (11th Cir. 2002). In other words, at issue here is whether the proposed amended claim is merely an attempt to expand upon the original claim, or if the amended claim relies upon different facts.

### B. Petitioner's Supplemental Facts and Arguments Related to Grounds Four, Five, Six, Seven, and Eight.

In Petitioner's second motion to amend, Petitioner adds additional facts and arguments to Grounds Four, Five, Six, Seven and Eight. (Doc. no. 22-1.) Petitioner likens the risk of civil commitment to the risk of deportation (Grounds Four and Five), explains he immediately requested an appeal after sentencing because no one informed him of a limitation on future computer use (Ground Six), and argues the Supreme Court's opinion in Johnson calls into question the Supreme Court's decision in United States v. Comstock, 130 S. Ct. 1949 (2010), which allowed civil commitment under the Adam Walsh Act (Ground Eight). (Id. at 9-16.) Petitioner also seeks to supplement his claim in Ground Seven, arguing counsel was ineffective for failing to argue Petitioner's conduct did not meet the elements of

9

18 U.S.C. § 2422(b), and for failing to inform Petitioner of his defenses to the charge when advising Petitioner to plead guilty. (Doc. no. 22-1, pp. 20-24.)

Respondent does not object to the addition of these new arguments regarding Petitioner's previously raised claims in Grounds Four, Five, Six, and Eight, but argues Petitioner's supplemental arguments to Ground Seven are new claims that are untimely and meritless. (Doc. no. 26, pp. 3, 13-15.) The Court finds Petitioner's supplemental arguments relate back to his original Ground Seven. Petitioner's original Ground Seven claim and supplemental arguments challenge counsel's analysis and advice regarding the scope of conduct criminalized by 18 U.S.C. § 2422(b), and whether Petitioner had a complete defense to the charge. (See doc. no. 1, p. 21; doc. no. 5, p. 8; doc. no. 22, pp. 20-24.) Accordingly, the Court **GRANTS IN PART** Petitioner's motion to amend (doc. no. 22-1) and will consider these supplemental facts and arguments. In addition, the Ground Seven claim as supplemented will be addressed at the evidentiary hearing because testimony regarding discussions between counsel and a defendant about the decision-making process in determining whether to accept a plea agreement is crucial to resolving ineffective assistance claims. United States v. Puentes-Hurtado, 794 F.3d 1278, 1285 (11th Cir. 2015).

### C. Petitioner's New Claims in Proposed Grounds Nine and Ten are Untimely, Do Not Relate Back to His § 2255 Motion, and Petitioner is Not Entitled to Equitable Tolling.

#### 1. Petitioner's New Claims Are Untimely and Do Not Relate Back.

28 U.S.C. § 2255(f), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides a one-year statute of limitations for § 2255 motions that runs from the latest of four possible dates:

10

1. the date on which the judgment of conviction becomes final;

2. the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3. the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4. the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Petitioner's judgment of conviction was entered on March 25, 2015, and because Petitioner did not file a direct appeal, his conviction and sentence became final fourteen days later, on April 8, 2015. See Mederos v. United States, 218 F.3d 1252, 1253 (11th Cir. 2000) (explaining that where no timely notice of appeal is filed and motion for leave to file out of time appeal is denied, judgment of conviction final on expiration of deadline for filing notice of appeal); Fed. R. App. P. 4(b)(1). Accordingly, the statute of limitations applicable to Petitioner's § 2255 claims ran in April 2016. Petitioner's original motion, signed on March 22, 2016, and filed on March 28, 2016, was timely.[1] Respondent did not dispute the timeliness or nature of Petitioner's first motion to amend, and the Court granted the motion and allowed Petitioner to supplement his existing claims and raise one new Johnson claim. (Doc. no. 10.) However, Petitioner's present motion to amend is untimely. As such, the proposed new claims are time-barred unless they relate back to

---

[1] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." Williams v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009).

Petitioner's original motion or if Petitioner is entitled to equitable tolling.

### 2.     Petitioner's New Claims Do Not Relate Back

Although Petitioner attempts to couch his new claims within existing claims, his new claims are too far removed from any claim in his original § 2255 motion or his amendment to his original § 2255 motion.  In Ground Four, Petitioner argues counsel was ineffective and his plea agreement was not knowingly or voluntarily entered, because he was not advised of the potential consequences of civil commitment under the Adam Walsh Act. (Doc. no. 1, pp. 5, 14-16.)  In Ground Five, Petitioner takes issue with the inclusion of state statutes in his plea documents and judgment, which Petitioner claims increases the possibility of civil commitment under the Adam Walsh Act. (Id. at 17-18.)

In proposed Grounds Nine and Ten, Petitioner contends counsel was ineffective at sentencing for (1) only calling one witness; (2) failing to seek psychological or addiction expert testimony; (3) failing to advise Petitioner concerning his sentencing exposure; (4) waiving preparation of the PSI; and (5) agreeing to a stipulated sentencing range.  (See generally doc. no. 22-1.)  All of these new contentions are entirely different than the contentions in Grounds Four and Five, with the sole commonality being that all of the alleged problems occurred in connection with Petitioner's plea and sentencing.  Thus, Petitioner's new claims in proposed Grounds Nine and Ten arise out of entirely different facts than those in Petitioner's original § 2255 motion and do not relate back.

### 3.     Petitioner is Not Entitled to Equitable Tolling as to his New Claims.

Petitioner's new claims would not be time-barred if they qualify for equitable tolling. Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline,

12

but only if a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Lawrence v. Florida, 549 U.S. 327, 336 (2007). Nevertheless, equitable tolling is typically applied sparingly, Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000), and is available "only in truly extraordinary circumstances." Johnson v. United States, 340 F.3d 1219, 1226 (11th Cir. 2003). The petitioner bears the burden of proving his entitlement to equitable tolling and will not prevail based upon a showing of either extraordinary circumstances or diligence alone; the petitioner must establish both. See Damren v. Florida, 776 F.3d 816, 821-22 (11th Cir. 2015).

Consideration of an otherwise untimely request for § 2255 relief may also be appropriate upon a showing that a "fundamental miscarriage of justice" has occurred, whereby "a constitutional violation has probably resulted in the conviction of one who is actually innocent." McQuiggin v. Perkins, 569 U.S.-, 133 S. Ct. 1924, 1931 (2013) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)); see also Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218-19 (11th Cir. 2000). The actual innocence exception "is exceedingly narrow in scope," and a time-barred petitioner seeking to invoke it must be able "(1) to present 'new reliable evidence . . . that was not presented at trial,' and (2) to show 'that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt' in light of the new evidence." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (citations omitted), *cert. denied*, 133 S. Ct. 351 (2012). As the Supreme Court emphasized, "The miscarriage of justice exception, we underscore,

applies to a <u>severely confined</u> category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" <u>McQuiggin</u>, 133 S. Ct. at 1933 (emphasis added).

Petitioner has not argued, let alone shown, diligence in raising his new claims, or that extraordinary circumstances prevented him from timely raising them. While Petitioner alleges he is factually innocent of the charges of which he was convicted, Petitioner has not pointed to new evidence showing it likely no reasonable juror would have convicted him. (<u>See</u> doc. no. 22, p. 24.) Instead, Petitioner relies on old evidence available at the time of his guilty plea, which is insufficient to satisfy the strict requirements of actual innocence. Accordingly, the Court finds no basis for equitably tolling AEDPA's one-year statute of limitations as to Petitioner's new claims in the present motion to amend. Petitioner's new claims in proposed Grounds Nine and Ten are dismissed as untimely.

### D. Petitioner's New Claims in Proposed Grounds Nine and Ten are Also Meritless.

Even if Petitioner's new claims were not subject to dismissal because they are untimely, they are still subject to dismissal because they are meritless and he has not establish ineffective assistance.

#### 1. The Standard for Ineffective Assistance of Counsel Under <u>Strickland</u>.

Ineffective assistance of counsel claims are subject to the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>See</u> <u>Massaro v. United States</u>, 538 U.S. 500, 505 (2003). Petitioner must show that counsel was constitutionally ineffective under the two prongs of <u>Strickland</u> by proving defense counsel's performance was deficient and prejudicial.

14

Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).

Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. Indeed, "strategic choices are 'virtually unchallengeable.'" Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690). "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993). To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. Strickland, 466 U.S. at 690.

Thus, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. "The relevant question is not what actually motivated counsel, but what reasonably could have motivated counsel." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense

15

counsel acted . . . ."  Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*)).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).  Under the prejudice prong of Strickland, a petitioner must show "that there 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  Brooks, 719 F.3d at 1300 (quoting Strickland, 466 U.S. at 694).  As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice."  Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).

### 2. Counsel Was Not Ineffective at Sentencing in Presenting Witness Testimony.

Petitioner alleges counsel was ineffective at sentencing by only calling one witness and failing to present psychological or addiction expert testimony that could have explained the impact Petitioner's drug use had on his decision-making and conduct.  (Doc. no. 22, pp.

6-7.)  These claims are meritless, do not warrant review at an evidentiary hearing, and are denied as futile.  Counsel's strategic decision regarding the number of witnesses to call at sentencing is entitled to deference.  See Evans v. Sec'y, Florida Dep't of Corr., 699 F.3d 1249, 1268 (11th Cir. 2012) ("[W]e add the point that which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.").  Here, as counsel explained at the sentencing hearing, it was not his practice to flood the Court with "witnesses and letters," but informed Chief Judge Hall that Petitioner had "significant community support." (CR 114-060, doc. no. 87, p. 5.)  Counsel shared a letter from a fellow inmate who was positively influenced by Petitioner's presence, and informed the Court of Petitioner's work ethic, support for his mother, and life as a productive member of society.  (Id. at 6.)

Petitioner was not prejudiced from the lack of testimony from an expert regarding his drug use.  Both Petitioner and his brother testified at sentencing concerning Petitioner's escalating drug use and how it caused to his poor decision making and conduct.  (CR 114-060, doc. no. 87, pp. 7-9.)  Petitioner's brother testified Petitioner told him about his addiction to methamphetamine, MDMA, and cocaine, and stated his belief that Petitioner was "not himself." (Id. at 9.)  Petitioner testified his drug addiction led to his poor decisions and caused pain to him and those around him.  (Id. at 11.)  Furthermore, counsel explained to Chief Judge Hall the impact methamphetamine had on Petitioner's impulse control and decision making.  (Id. at 21-22.)

Counsel was not ineffective for failing to introduce an addiction expert's cumulative and common-sense testimony linking Petitioner's drug addiction to his behavior and poor

17

decisions in the same manner as the testimony of Petitioner and his brother.  Because the focus of Petitioner's prosecution was his attempted enticement of a minor, and not his abuse of drugs, there is no reasonable probability expert witness testimony concerning Petitioner's drug addiction would have changed the outcome of Petitioner's sentencing.  Indeed, in sentencing Petitioner to 130 months incarceration, Chief Judge Hall emphasized Petitioner's case was not "more about drugs than about enticement of a minor . . . [and while] meth may have been a contributing factor . . . the reason we're here today is because [Petitioner] attempted to entice a minor to have sex."  (Id. at 25.)  In sum, Petitioner has not demonstrated prejudice from counsel's decision to call one witness, and to not seek testimony by an addiction expert.

### 3. Counsel Was Not Ineffective in Recommending a Stipulated Sentence, Waiving the PSI, and Failing to Advise Petitioner of the Guideline Sentencing Range.

Petitioner also raises the new arguments that counsel was ineffective for waiving the preparation of a PSI, agreeing to a stipulated sentencing range, and failing to investigate and advise Petitioner as to his likely sentencing exposure.  These new arguments are likewise futile.  "[T]here are countless ways to provide effective assistance in any given case . . . [e]ven the best criminal defense attorneys would not defend a particular client in the same way."  LeCroy v. United States, 739 F.3d 1297, 1313 (11th Cir. 2014) (internal quotations omitted).  Attorneys are free to choose between viable avenues of defense, and are not ineffective for making the strategic decision to take one avenue to the exclusion of another.  Id.  The Court's inquiry is limited to whether defense counsel's strategy was reasonable.  Id. (citing Chandler v. United States, 218 F.3d 1305, 1315 at n. 16 (11th Cir. 2000)).

First, to the extent Petitioner argues counsel was ineffective in conveying his opinion Petitioner should accept the plea agreement, Petitioner cannot show this opinion as to strategy was unreasonable. Indeed, it was Petitioner who decided to accept a guilty plea a few days before trial in the face of undisputed evidence he traveled a long distance seeking sex with a minor. (Doc. no. 26, Ex. F, pp. 5-6.)

Petitioner also cannot show prejudice from counsel's advice to accept the terms of the plea agreement, which included waiving preparation of a PSI and agreeing to a stipulated sentencing range. Petitioner and counsel were aware that Petitioner faced a mandatory minimum sentence of 120 months, and a maximum sentence of life imprisonment. (CR 114-060, doc. no. 87, pp. 3-4.) By agreeing to waive preparation of a PSI, and agreeing to a stipulated sentencing range, Petitioner reduced his sentencing exposure and ensured the Court could not sentence him to more than 140 months incarceration. (Id. at 4-5.) Indeed, as Petitioner now claims, his advisory guideline range calculated by a PSI would have been 121 to 151 months, a range higher than the stipulated range of 120-140 months in his plea agreement. (Doc. no. 22, pp. 16-17.) In sum, Petitioner cannot demonstrate counsel's strategic decisions, which resulted in a sentencing range and sentence well below the statutory maximum, and within the guideline range, was unreasonable or caused prejudice. For these same reasons, Petitioner cannot demonstrate deficient performance or prejudice from counsel's alleged failure to investigate and inform Petitioner of his likely sentencing range of 121 to 151 months.

### E. Evidentiary Hearing

The Court **GRANTS** Petitioner's motion for an evidentiary hearing. (Doc. no. 22-2.) The evidentiary hearing will proceed as to Petitioner's claims in Grounds Six and Seven as supplemented. (Doc. no. 22-1, pp. 19-24.)

### III. CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Petitioner's motion to amend (doc. no. 22-1), and **GRANTS** Petitioner's motion for a hearing (doc. no. 22-2). The evidentiary hearing will proceed as to Petitioner's Grounds Six and Seven claims as supplemented.

SO ORDERED this 27th day of July, 2017, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA